ABELMANN ROLLINS LLLC

W. RICHARD ABELMANN 9158
CHRISTOPHER T. ROLLINS 9795
1330 Ala Moana Blvd. Ste. 301
Honolulu, Hawaii 96814
Tel 808.589.1010  Fax 888.797.7471
rick@abelmannlaw.com | chris@abelmannlaw.com

Attorneys for Debtors VICTORINO B. DADIZ, SR.
and EVANGELINE P. DADIZ

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAII

| In re | ) | CASE NO. 13-00248 |
| | ) | (Chapter 13) |
| VICTORINO B. DADIZ, SR. and | ) | |
| EVANGELINE P. DADIZ, | ) | MOTION TO APPROVE |
| | ) | LOAN MODIFICATION; |
| | ) | DECLARATION IN |
| | ) | SUPPORT OF MOTION; |
| | ) | EXHIBIT "A" |
| | ) | |
| Debtors. | ) | |
| | ) | Date:    October 11, 2013 |
| | ) | Time:    9:30 am |
| _____) | | Judge:   Hon. Robert J. Faris |

MOTION TO APPROVE LOAN MODIFICATION

COME NOW VICTORINO B. DADIZ SR. and EVANGELINE P. DADIZ ("Debtors"), by and through their attorneys, Abelmann Rollins LLLC, and respectfully file this Motion to Approve Loan Modification requesting the court to approve the terms of the attached loan modification.

1. Debtors filed their Chapter 13 petition and plan on February 19, 2013.

2. Debtors premised their Chapter 13 petition and plan upon completion of a successful loan modification which would eliminate arrears and reduce the monthly payments on their first mortgage.

3. Such loan modification has now been proposed by creditor IndyMac Mortgage Services, a division of OneWest Bank, FSB ("IMS") and is attached hereto as Exhibit "A".

4. The mortgage is currently paid directly by the Debtors.

5. The current mortgage payment is $2,884.00/month at an interest rate of 6.2500%. There is an arrearage in the amount of $10,568.08 indicated in Proof of Claim No. 7 filed by OneWest Bank, FSB.

6. The details of the proposed loan modification are as follows: Debtors' arrearages, unpaid and deferred interest, fees, escrow advances and other costs will be added to the principal of the loan. The new principal balance will be $349,509.81. Payments on the mortgage will be an initial $987.57 on September 1, 2013 with an interest rate of 2.000%. On September 1, 2018 payments will increase to $1,147.32 a month with an interest rate of 3.000%. On September 1, 2019 payments will increase to $1,315.96 a month with an interest rate of 4.000%. On September 1, 2020 payments will increase to $1,380.76 with an interest rate of 4.37500% and continue until the maturity

2

date on September 1, 2053.

7. Debtors request an order from this court requiring IMS to amend its Proof of Claim to reflect the elimination of the arrearage and the terms indicated in the proposed loan modification agreement.

8. Upon entry of the order approving this loan modification, Debtors will amend their Chapter 13 plan and schedules as necessary to reflect the terms of the loan modification agreement.

WHEREFORE, Debtors respectfully request that this Court:

A. Approve the attached loan modification;

B. Order IMS to amend its proof of claim consistent with the loan modification;

C. Order IMS to account for any disbursements received from the Debtors' bankruptcy estate from the Chapter 13 Trustee; and

D. Such other and further relief as it deems necessary.

DATED: Honolulu, Hawaii, September 10, 2013.

ABELMANN ROLLINS LLLC

/s/ W. Richard Abelmann
W. Richard Abelmann
Attorneys for Debtor VICTORINO B. DADIZ, SR. and EVANGELINE P. DADIZ

ABELMANN ROLLINS LLLC

W. RICHARD ABELMANN 9158
CHRISTOPHER T. ROLLINS 9795
1330 Ala Moana Blvd. Ste. 301
Honolulu, Hawaii 96814
Tel 808.589.1010  Fax 888.797.7471
rick@abelmannlaw.com | chris@abelmannlaw.com

Attorneys for Debtors VICTORINO B. DADIZ, SR.
and EVANGELINE P. DADIZ

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAII

| In re | ) | CASE NO. 13-00248 |
|---|---|---|
| | ) | (Chapter 13) |
| VICTORINO B. DADIZ, SR. and | ) | |
| EVANGELINE P. DADIZ, | ) | DECLARATION OF W. |
| | ) | ABELMANN; EXHIBIT "A" |
| Debtors. | ) | |
| | ) | |
| | ) | Date:  October 11, 2013 |
| | ) | Time:  9:30 a.m. |
| _____ | ) | Judge:  Hon. Robert J. Faris |

DECLARATION OF W. RICHARD ABELMANN; EXHIBIT "A"

The undersigned does hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief:

1. I am an attorney with Abelmann Rollins LLLC, counsel for Debtors Victorino B. Dadiz Sr. and Evangeline P. Dadiz.

2. I make this declaration upon personal knowledge, unless otherwise indicated, and am competent to testify as to all matters stated in this

4

declaration.

3. Attached hereto as Exhibit "A" is a true and correct copy of a LOAN MODIFICATION AGREEMENT dated July 8, 2013 sent by IndyMac Mortgage Services, a division of OneWest Bank, FSB for the attention of Debtors Victorino B. Dadiz Sr. and Evangeline P. Dadiz.

DATED: Honolulu, Hawaii, September 10, 2013.

ABELMANN ROLLINS LLLC

/s/ W. Richard Abelmann
W. Richard Abelmann
Attorneys for Debtors VICTORINO B. DADIZ, SR. and EVANGELINE P. DADIZ

# EXHIBIT "A"

U.S. Bankruptcy Court - Hawaii   #13-00248   Dkt # 19   Filed  09/10/13   Page 6 of 11

Reference #: 1009798834-231033-06062013

Investor Loan #: 1703815599

After Signing Return To:
IndyMac Mortgage Services
Mailcode: IndyMac-5
2900 Esperanza Crossing
Austin, TX 78758

This document was prepared by _____

_____[Space Above This Line For Recording Data]_____

# HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I"):[1] Victorino Bolibol Dadiz
Lender or Servicer ("Lender"): IndyMac Mortgage Services
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 4/20/2007
Loan Number: 1009798834
Property Address ("Property"): 94- 1182 Hoomakoa St, Waipahu, HI 96797

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations**. I certify, represent to Lender and agree:

    A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
    B. One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned.
    C. There is no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;
    D. I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));
    E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;
    F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and
    G. I have made or will make all payments required under a Trial Period Plan.

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT** – Single Family – Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**
**Form 3157** 3/09 (rev. 10/10) (page 1 of 5 pages)

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

   B. I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 10/1/2013 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment will be due on 10/1/2013.

   A. The new Maturity Date will be: 9/1/2053.

   B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $349,509.81 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means Interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

   C. $23,392.15 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $326,117.66. Interest at the rate of 2.00000% will begin to accrue on the Interest Bearing Principal Balance as of 9/1/2013 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 10/1/2013. My payment schedule for the modified Loan is as follows:

   | Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
   |---|---|---|---|---|---|---|---|
   | 1-5 | 2.00000% | 9/1/2013 | $987.57 | $216.19, may adjust periodically | $1,203.76, may adjust periodically | 10/1/2013 | 60 |
   | 6 | 3.00000% | 9/1/2018 | $1,147.32 | May adjust periodically | May adjust periodically | 10/1/2018 | 12 |
   | 7 | 4.00000% | 9/1/2019 | $1,315.96 | May adjust periodically | May adjust periodically | 10/1/2019 | 12 |
   | 8-40 | 4.37500% | 9/1/2020 | $1,380.76 | May adjust periodically | May adjust periodically | 10/1/2020 | 396 |
   | An estimated balloon payment of $23,392.15 is due on 9/1/2053 for your loan to be paid in full. | | | | | | | |

   *The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.
   The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan. My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.
E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.
F. I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.
G. If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4. **Additional Agreements**. I agree to the following:
    A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.
    B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.
    C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.
    D. Funds for Escrow Items. I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.
    Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s);(d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

N. I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

P. THIS LOAN IS A BALLOON LOAN AND IS PAYABLE IN FULL AT MATURITY. THIS MEANS THAT YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE AT THE MATURITY DATE, AND LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE BE REQUIRED TO REPAY THE LOAN OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

In Witness Whereof, the Lender and I have executed this Agreement.

_____  
Lender

By: _____

_____  
Date

_____  
Victorino Bolibol Dadiz

_____  
Date

18/7 900000179 [7/10]

_____[Space Below This Line For Acknowledgement]_____

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3157  3/09 (rev. 10/10) (page 5 of 5 pages)

U.S. Bankruptcy Court - Hawaii   #13-00248   Dkt # 19   Filed   09/10/13   Page 11 of 11